UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

G&G CLOSED CIRCUIT EVENTS INC.,

        Plaintiff,

    v.                                     Case No. 11-C-673

CCMC, INC., d/b/a DRINKS INC.,
CHRISTOPHER THOMAS VANDENHEUVEL, SR.,
individually and as officer, shareholder, and registered agent
of CCMC, Inc., and THOMAS VANDENHEUVEL,
individually and as officer and shareholder of CCMC, Inc.,

        Defendants.

---

**ORDER ON MOTION FOR DEFAULT JUDGMENT**

---

Plaintiff G&G Closed Circuit Events Inc. brought this action alleging that Defendants CCMC, Inc. d/b/a Drinks, Inc., Christopher Thomas VandenHeuvel, Sr., and Thomas VandenHeuvel knowingly and willfully violated 47 U.S.C. §§ 553 and 605 by unlawfully intercepting the Strikeforce: "M1-Global": Fedor Emelianenko v. Fabricio Werdum fight (the Broadcast) which took place on June 26, 2010. Jurisdiction arises under 28 U.S.C. § 1331. Defendants have failed to appear in this action.

Plaintiff filed an initial motion for default judgment on September 23, 2011. On October 21, 2011, defendant Christopher T. VandenHeuvel appeared and counsel for the plaintiff indicated that they had reached an agreement to resolve the case. Specifically, the agreement called for the defendants to pay $8,000.00 to the plaintiff within 30 days and another $1,000.00 per month thereafter for a total of $12,000.00. The parties further indicated that they understood that if the

defendants defaulted on the payments at any time, plaintiff would request double the amount of the settlement, less whatever had been paid to date. Defendant Christopher VandenHeuvel confirmed the agreement. Plaintiff thereafter filed a motion to reopen, indicating the defendants made no payments. The Court granted the motion to reopen on May 23, 2012, as to Christopher VandenHeuvel for $24,000 pursuant to the settlement agreement. (ECF No. 16.) Because the remaining parties had not appeared either personally or by counsel, however, the Court advised Plaintiff that they were not bound by the same agreement. Plaintiff was given the option of proceeding against the remaining defendants or simply accepting the judgment against Christopher VandenHeuvel. As evidenced by the motion before the Court now, Plaintiff has elected to proceed against the remaining defendants. The matter is before me now on Plaintiff's motion for entry of default judgment and award of damages, attorney's fees, and costs as to the remaining defendants. (ECF No. 21.)

**I. Background**

The background facts of this case, except for those relating to damages, are taken from the allegations of plaintiff's complaint and are deemed admitted as a consequence of defendants' default. *See, e.g., Black v. Lane*, 22 F.3d 1395, 1397 n. 4 (7th Cir. 1994). Plaintiff has established that it owned the distribution rights to the Broadcast, which was broadcast by closed circuit television or by encrypted satellite signal. Plaintiff then entered into contracts with commercial establishments in Wisconsin to enable them to publicly exhibit the program to their patrons.

In an effort to ensure that only those establishments that have paid to exhibit its programming actually gain access to the Broadcast, Plaintiff dispatched auditors to various

2

establishments to investigate whether the Broadcast was displayed without authorization. One of plaintiff's auditors went to Drinks, Inc. at 10:16 p.m. on June 26, 2010. (ECF No. 22-2 at 1.) The auditor observed that two of the establishment's television sets were showing the Broadcast. The auditor did not pay a cover charge and at its peak counted 43 individuals in the facility.

**II. Liability**

Plaintiff alleges that defendants violated 47 U.S.C. §§ 553 and 605, but without the benefit of discovery or an admission from Defendants, Plaintiff cannot determine exactly how defendants intercepted its signal (i.e., via coaxial cable or satellite). As Plaintiff acknowledges, it may not simultaneously pursue relief under §§ 553 and 605, because the sections target two distinct types of piracy. *See United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996) (holding that 47 U.S.C. § 605 governs the interception of programming as it travels through the air, while 47 U.S.C. § 553 governs the interception of cable television programing traveling over a cable network). Plaintiff requests relief under § 605, but cannot demonstrate conclusively that defendants intercepted a satellite signal on June 26, 2010. Nevertheless, it is logical to conclude from the allegations of the complaint that Defendants either used an illegal satellite receiver, misrepresented their business establishment as a residence or removed an authorized receiver from one location to a different business location in order to intercept Plaintiff's broadcast in violation of § 605. (Compl. ¶ 15.) In any event, as this case does not approach anywhere near the maximum amount of statutory damages, for purposes of damage assessment the actual section violated is somewhat meaningless; the violation itself — and not the method of violation — is enough to proceed and award damages.

As a result of Defendants' default, they are deemed to have unlawfully intercepted the Broadcast and shown it to their patrons and to have done so willfully and for purposes of direct or indirect commercial advantage or private financial gain. *See Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"); *see also Kingvision Pay–Per–View, Ltd. v. Scott E's Pub., Inc.*, 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) ("'Willful' as used in these statutes means a 'disregard for the governing statute and an indifference for its requirements.'") (quoting *ON/ TV v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)). "'In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct.'" *Garden City Boxing Club, Inc. v. Frezza*, 476 F. Supp. 2d 135, 138 (D. Conn. 2007) (quoting *J & J Sports Prods., Inc. v. Drake*, No. 06cv246 (ILG)(RML), 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006)).

Personal liability against Defendant Thomas VandenHeuvel is appropriate in this case based upon the allegations of the complaint. The complaint alleges upon information and belief that Thomas VandenHeuvel is an officer of CCMC, Inc. and was the individual with supervisory capacity and control over the activities occurring at Drinks, Inc. on June 26, 2010 and received financial benefit from the operations of Drinks, Inc. on that night. (Compl ¶ 8, 10.) By his default Thomas VandenHeuvel also forfeits his ability to contest his personal liability for the violation alleged by Plaintiff, as he is deemed to have had the necessary supervisory control over the interception and received financial benefit from the same. *See J & J Sports Productions, Inc. v. Ribeiro*, 562 F. Supp. 2d 498 (S.D.N.Y. 2008) (individual who was officer, director, shareholder,

4

and/or principal of corporation that operated bar was liable in her individual capacity under § 605 for bar's unlawful interception and exhibition of pay-per-view boxing match, where she had supervisory control over interception, and received financial benefit therefrom).

**III. Damages**

A claimant entitled to relief under § 605 may elect actual or statutory damages pursuant to § 605(e)(3)(C)(i). Plaintiff has elected statutory damages, which range from a minimum of $1,000 to a maximum of $10,000, in the discretion of the Court. 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff also seeks enhanced damages for a willful violation. Section 605 permits enhanced damages of up to $100,000, in the discretion of the Court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. *See, e.g., Kingvision*, 146 F. Supp. 2d at 959–61. Finally, under § 605(e)(3)(B)(iii), plaintiff has requested an award of attorneys' fees and costs in the amount of $1,250.00.

I first turn to the question of what amount of statutory damages is appropriate in this case. Judge Adelman has noted the various ways in which courts have gone about calculating statutory and enhanced damages for violations of § 605:

> Some courts have assessed statutory damages using as a yardstick the number of patrons in the establishment viewing the show. *See, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 489 (listing cases); *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same). Some courts have awarded a flat sum for each violation. *See, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 489–90 (listing cases); *Taco Rapido Rest.*, 988 F. Supp. at 111 (same). A multiplier has been used in cases of willful violations. *See, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 491 (recommending for willful violation an additional three times the base statutory damages award for one defendant, an additional four times the award for another defendant, and an additional eight times the award for a third defendant); *Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp.*, No. CV 88

> 2834(ASC), 1991 WL 58350, *2 (E.D.N.Y. 1991) (awarding an additional amount
> for willful violation in the amount of five times the initial statutory damages award).

*Kingston Pay–Per–View*, 146 F. Supp. 2d at 960. The court in *Kingston* calculated the statutory damages based upon the rate the plaintiff charged its customers for the right to exhibit the program, which in turn was based upon the maximum fire code occupancy of the building in which the exhibition was to take place.

Here, it is unclear what Plaintiff would charge to permit Defendants to show the Broadcast, so the Court must consider an alternate means of calculating damages. As another court has noted, where the number of patrons at a defendant's establishment is known, most courts award § 605 damages based upon the number of patrons. *Joe Hand Promotions, Inc. v. Kaczmar*, No. 08 C 2910, 2008 WL 4776365, *2 (N.D. Ill. Oct.29, 2008) (basing award on baseline of $55 per patron) (quotation and citation omitted). Accordingly, the Court will award statutory damages of $55 per patron, meaning plaintiff is entitled to $2,365 in statutory damages based upon the auditor's observation of 43 individuals at Drinks, Inc.

As I have already concluded that Defendants' violation was willful within the meaning of the statute, I now turn to the question of what amount of enhanced damages is appropriate. The only guidance the statute itself gives courts in assessing damages for willful violations is that they not exceed $100,000 for violations of § 605 and $50,000 for violations of § 553. 47 U.S.C. § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(i)(II). In order to arrive at an enhanced damage figure, courts have considered factors such as: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. *Kaczmar*, 2008

WL 4776365, at *2 (citations omitted). Beyond these factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Id.* (citations omitted).

There is nothing to suggest that the Defendants have pirated in the past. Also missing from the record is any indication of the extent of any ill-gotten gains by the Defendants or the actual damages suffered by Plaintiff for this act of piracy. Further, Defendants do not appear to have advertised the event and the auditor's affidavit indicates he was not required to pay a cover charge. Thus, all of these factors point toward a lower amount of enhanced damages.

On the other hand, the information required to determine the profit the defendants actually received from their actions, as well as whether they had engaged in similar conduct in the past is unknown because the defendants failed to appear. I am reluctant to assume that all factors are mitigating simply because the defendants elect not to appear. Indeed, if defendants wish to argue in mitigation, they ought to show up and present the arguments themselves. There is also the need to deter future violations. The fact that Christopher VandenHeuvel appeared and negotiated a settlement that called for $12,000 if paid without further court action and a judgment in the amount of $24,000 if not, is also a factor I take into consideration. Christopher certainly had no incentive to pay more than he thought fair.

Taking these matters into consideration, the court will award enhanced damages of $19,978. Together with the $2,365 in statutory damages, $1250 in attorneys fees and $407 in costs, the total comes to $24,000, the same amount Christopher agreed to pay in the event he failed to pay as

7

agreed. Accordingly, the Clerk is directed to enter final judgment against all of the defendants, jointly and severally, in the amount of $24,000.

**SO ORDERED** this   2nd   day of July, 2012.

                                        s/ William C. Griesbach
                                        William C. Griesbach
                                        United States District Judge